**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Equal Employment Opportunity Commission,

Plaintiff,

vs.

AutoZone, Inc.,

Defendant.

No. CV-06-1767-PCT-PGR

OPINION AND ORDER

Pending before the Court is Plaintiff EEOC's Motion for Partial Summary Judgment (doc. #112), to which plaintiff intervenor Chad Farr has filed a one-sentence joinder (doc. #111).[1] Having considered the parties' memoranda in light of the evidence of record, the Court finds that the motion should be granted in part and denied in part pursuant to Fed.R.Civ.P. 56.[2]

Background

The Equal Employment Opportunity Commission ("EEOC") commenced

---

1 Although the parties have requested a hearing, the Court concludes that the oral argument of counsel would not aid the decisional process.

2 The Court notes that it is discussing herein only those arguments of the parties that it considers necessary to the resolution of the pending motion.

this action on July 17, 2006 against AutoZone, Inc.; the EEOC, acting on behalf of Chad Farr, a former AutoZone employee, alleges in its complaint that AutoZone violated the Americans With Disabilities Act ("ADA") by failing to reasonably accommodate Farr's visual impairment by permitting him to bring a guide dog to work, and by denying him a promotion based on his visual impairment. Farr filed a complaint in intervention on November 13, 2006 that mirrors the EEOC's complaint.

For purposes of the pending motion, the Court considers the following facts to be undisputed, or at least not sufficiently controverted.[3] Farr was initially diagnosed with retinitis pigmentosa when he was eight or nine. As a result of his retinitis pigmentosa, which is an untreatable degenerative eye condition which impairs peripheral and night vision, Farr has tunnel vision and his central field of vision is very small; he has a non-overlapping field of vision of some six degrees in each eye, as opposed to the normal field of vision of 90 degrees for each eye. Farr's vision in his right eye is correctable to 20/50, while his vision in his left eye is correctable only to 20/200. Farr is deemed to be legally blind by the Social Security Administration. Farr's eyesight has overall remained fairly stable from 1999 through 2007.

Farr was hired by AutoZone as a part-time customer service representative in July, 2002 at its auto parts store in Cottonwood, Arizona; he last worked at the store in October, 2003. During that time period, Farr was physically able to complete all of the duties required of him, which included serving customers,

---

[3] Since the parties are familiar with the facts of this case, the Court references the facts here only as they may be relevant to the Court's disposition of the pending motion.

stocking shelves, working the cash register, performing inventory, as well as other tasks. Steve Agredano, the manager of the store where Farr worked, did not have any complaints about Farr's job performance; he believed that Farr did everything expected of him and did it well, that he was able to perform the essential job functions with the possible exception of operating the brake lathe, and that he worked twice as hard as everyone else.

At Farr's request, Agredano informally granted Farr a leave of absence as of October 22, 2003, so that Farr could attend guide dog training in California. In late November, 2003, Farr informed Agredano that he wanted to return to work and that he needed to bring his guide dog with him to the store. Although Farr believed that he needed the dog in part to help him perform his job duties, he only told Agredano at that time that he needed the dog to help him get to and from work and wanted in effect to tether the dog in the store while he worked. Agredano told Farr that while he did not have a problem with Farr returning to work, and in fact wanted Farr to return to work, he had liability concerns about having the dog in the store and he needed to get permission from the proper channels at AutoZone before allowing Farr to keep the guide dog in the store during work hours. Agredano advised Scott Anderson, AutoZone's human resources director for the Phoenix region, and Kevin Burson, AutoZone's district manager, of Farr's request. Anderson took over the process of obtaining the necessary information so that AutoZoner Relations, which is a component of AutoZone's legal department located in Memphis, Tenn., could resolve Farr's request to have a guide dog at work.

On December 18, 2003, Farr provided Anderson with a physical capability form signed by Dr. Serge Wright, Farr's treating optometrist; the gist of the form

was that Dr. Wright believed that Farr had no restrictions from a visual standpoint on his ability to perform his job duties. On December 19, 2003, Dr. Wright faxed a letter to Anderson that stated in part that “Chad needs the dog with him at work for safety because the dog acts as his peripheral vision. His visual field is less that 10 degrees due to retinitis pigmentosa causing tunnel vision. Without the dog to show him the way, he could fall over any object within the 10 degree peripheral area because he cannot see it. However, his straight ahead vision is just fine for computer use, reading and other work related activities.” Anderson faxed Dr. Wright’s letter and physical capability form to Staci Saucier, AutoZone’s divisional human resources manager, on December 22, 2003; Saucier received the documents.

Pursuant to a request from Anderson for information regarding the training of the guide dog, Farr faxed Anderson a copy of the dog’s certification form from the Guide Dogs of the Desert on January 5, 2004. Anderson faxed the certification to Tim Harrison, AutoZone’s in-house counsel, and placed the certification in Farr’s personnel file; Anderson immediately re-faxed the certification after he was told that it had not been received in Memphis. Although no one at AutoZoner Relations believed that the certification had been received in that office, no one at AutoZoner Relations followed up with Anderson about it after Anderson informed them that he had re-faxed the certification and no one at AutoZone thereafter made any additional attempt to obtain the certification.

Farr filed his initial charge of discrimination with the EEOC on January 5, 2004; he filed an amended charge on September 24, 2004.

Anderson was discharged by AutoZone on January 28, 2004. Donna Porter, Anderson’s successor as the regional human resource manager, never

spoke to Farr about his request to return to work with his guide dog, nor did Teresa James, AutoZone's benefits manager, who had been instructed by AutoZone's legal department to obtain information regarding the dog's certification. AutoZone's in-house counsel also did not contact Farr about his guide dog request. Despite some efforts by Farr to follow-up with AutoZone, he never heard back from Anderson after providing him with the dog's certification, nor did he thereafter hear back from any other AutoZone official about his request to return to work with his guide dog.

According to in-house counsel Harrison, the only hold-up on AutoZone's part to Farr returning to work was the non-receipt of the guide dog's certification. Notwithstanding AutoZone's initial position regarding the need for the certification, Harrison sent an e-mail to Donna Porter on January 10, 2005 stating that Farr should be returned to work and that receipt of the dog's certification was no longer mandatory since Farr had apparently provided a copy of it to Anderson. However, AutoZone never thereafter informed Farr that he could return to work with his guide dog, and Farr never returned to work.

<u>Discussion</u>

The EEOC seeks partial summary judgment on the following issues: (1) that Chad Farr was at all relevant times a qualified individual with a disability under the ADA; (2) that AutoZone violated the ADA by failing to grant Farr's reasonable accommodation request; and (3) that AutoZone failed to comply with the ADA's mandatory record keeping requirements.[4]

---

[4] The EEOC also seeks summary judgment on its contention that AutoZone's affirmative defenses of laches, waiver, estoppel and statute of limitations are factually and/or legally insufficient. The Court deems this issue to (continued...)

A. Qualified Individual With a Disability

In order to be entitled to the protections of the anti-discrimination provisions of the ADA, an employee must initially establish that he is a "qualified individual with a disability." 42 U.S.C. § 12112(a). The EEOC asserts, over AutoZone's disagreement, that there is no factual dispute that Farr is a "qualified individual with a disability" for purposes of the ADA.[5] The EEOC's initial argument is that this issue cannot be contested because Staci Saucier, AutoZone's regional human resource manager who was AutoZone's Fed.R.Civ.P. 30(b)(6) deponent, testified that AutoZone had no reason to doubt that Farr was a qualified individual with a disability at the time he requested that he be allowed to return to work with his guide dog. AutoZone argues that Saucier's answer was based on "a layperson's ordinary usage of the terms without any legal definition implication."

The Court cannot conclude that AutoZone, as a result of Saucier's testimony, has admitted as a matter of law that Farr was a "qualified individual with a disability" as that phrase is used in the ADA because there is nothing in the submitted record that establishes what Saucier understood the legal meaning of the phrase to be at the time she testified.[6] *Cf.* 8A Wright, Miller & Marcus,

---

[4](...continued) be moot because AutoZone states in its response that it is withdrawing its affirmative defenses of laches, waiver, estoppel, statute of limitations, assumption of the risk, contributory negligence and release.

[5] The ADA defines "a qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

[6] The following is the entire relevant portion of Staci Saucier's deposition: (continued...)

Federal Practice and Procedure, § 2103 ("[T]he testimony of a Rule 30(b)(6) representative, although admissible against the party that designates the representative, is not a judicial admission absolutely binding on that party.")

The EEOC further argues that there can be no dispute that Farr is disabled for ADA purposes even if Saucier's testimony is disregarded because the evidence of record establishes that Farr's retinitis pigmentosa substantially limits his ability to see.[7] In order to be disabled for purposes of the ADA, a person must have an impairment, that impairment must limit a major life activity, and the limitation on the major life activity must be substantial. Bragdon v. Abbott, 524 U.S. 624, 631,118 S.Ct. 2196, 2202 (1998); E.E.O.C. v. United Parcel Service,

---

[6](...continued)

Q. When Mr. Farr requested an accommodation, did AutoZone have any question as to whether Mr. Farr was disabled?
[Counsel]. Object to form.
* * *
Q. I understand you're not a lawyer, correct? But as a human resources manager, you understand that you need to show that you're a qualified individual with disability in order to get an accommodation; is that correct?
A. Correct.
Q. Okay. Did AutoZone have any question, when Mr. Farr requested an accommodation, that he was a qualified individual with a disability?
[Counsel]. Object to form and foundation. Go ahead.
A. Not to my knowledge.
Q. Okay. To your knowledge, did it believe that he was a qualified individual with a disability?
A. Yes.

(Saucier's deposition, p. 108 l.18-p.109 l.14)

[7] There is no dispute that Farr is a "qualified individual" for ADA purposes as the uncontroverted evidence establishes that he is able to perform the essential functions of his former AutoZone job with or without reasonable accommodation. 42 U.S.C. § 12111(8).

Inc., 306 F.3d 794, 801 (9th Cir.2002); 42 U.S.C. § 12102(2). It is undisputed here that retinitis pigmentosa constitutes a physical impairment within the meaning of the ADA, and that "seeing" is a major life activity under the ADA. What is disputed is whether Farr's retinitis pigmentosa substantially limits his major life activity of seeing. Under the EEOC regulations, the phrase "substantially limits" is defined in part as being "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(ii).

While there is no question that the uncontroverted evidence of record establishes that Farr's vision is substantially worse than that of the average person, that alone is insufficient to establish as a matter of law that he is disabled for ADA purposes. *See* Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 564-65, 119 S.Ct. 2162, 2168 (1999) (Supreme Court rejected Ninth Circuit's conclusion that the plaintiff was disabled for purposes of the ADA simply because his monocular vision caused him to see in a manner that was significantly different from the manner in which most people see, *i.e.*, with just one eye instead of two); *see also,* Fraser v. Goodale, 342 F.3d 1032, 1040 (9th Cir.2003), *cert. denied*, 541 U.S. 937 (2004) (Court noted that the fact that the plaintiff "simply *differs* from the average person in how [he] performs a major life activity is patently insufficient for a substantial limitation [under the ADA.])" The determinative issue is whether Farr's retinitis pigmentosa "prevent[s] or severely restrict[s] use of his eyesight compared with how unimpaired individuals normally use their eyesight in daily life." E.E.O.C. v. United Parcel Service, Inc., 306 F.3d at 802. This requires an

individualized inquiry based on Farr's own experience as to whether his "vision impairment, as corrected or compensated for, is substantially limiting across a broader range of activities than the job at issue. ... The critical inquiry is whether seeing as a whole is substantially limited for purposes of daily living." *Id*. at 802-03.

Viewing the evidence of record, and the reasonable inferences arising therefrom, in the light most favorable to AutoZone, the Court cannot conclude that the EEOC has established that the only finding that a reasonable jury could reach from the submitted record is that Farr's vision impairment constitutes a disability for ADA purposes. While the record, which is quite limited regarding Farr's range of activities, contains evidence showing that there are activities of daily living that Farr cannot perform given his retinitis pigmentosa[8], the limited record also contains evidence showing that his vision impairment does not foreclose him from using his eyesight as most people do for other daily activities that a reasonable

---

[8] For example, Farr's declaration states in relevant part:

> 6. In 2003 and now, my vision has impaired my ability to perform many daily activities that my friends and family members are able to perform. I cannot drive and I can only walk around town with my guide dog or, if he is required to rest, another assistive cane. Because of inadequate public transportation, I must either walk or rely on others for transportation. I have particular difficulty navigating at night or in dark areas because of my limited night vision. I also have been able to pursue and excel in college, but only with the use of assistive technology. Finally, there are many other daily activities, I cannot engage in because of my vision that others are able to engage in, such as running or riding bicycles, or that I engage in more slowly and cautiously than others, such as cooking.

jury could determine are of central importance to most people.[9] The issue of the extent of Farr's disability for ADA purposes must be resolved by the trier of fact.

B. Reasonable Accommodation

Both sides seek summary judgment on the EEOC's claim that AutoZone violated the ADA by failing to accommodate Farr's request to return to work with his guide dog.[10] It is an act of discrimination under the ADA for an employer to fail to reasonably accommodate a qualified employee with a disability unless the employer can establish that the accommodation would impose an undue hardship.[11] 42 U.S.C. § 12112 (b)(5)(A). Once an ADA-disabled employee requests an accommodation for his disability, the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation. Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1089 (9th Cir.2002); Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1137 (9th Cir.2001), *cert. denied*, 535 U.S. 1011 (2002). The Court concludes that the presence of genuine issues of material fact preclude it from resolving this issue

---

9 For example, Farr testified that, notwithstanding his retinitis pigmentosa, he graduated from a vocational high school with a degree in carpentry, he was attending community college and was planning on obtaining a masters degree, and that he was able to perform his job duties and responsibilities both while employed by AutoZone and in his subsequent job. Dr. Wright, Farr's treating physician, noted in a letter to AutoZone that while Farr has very limited peripheral vision, his "straight ahead vision is just fine for computer use, reading and other work related activities."

10 Although AutoZone did not file a cross-motion for summary judgment, it requests in its response that the Court *sua sponte* enter summary judgment in its favor on the reasonable accommodation issue.

11 AutoZone's response to the summary judgment motion does not raise any defense of undue hardship.

as a matter of law even if Farr is assumed to be a "qualified individual with a disability."

AutoZone's main defense is that its duty to provide Farr with a reasonable accommodation for his retinitis pigmentosa never arose as a matter of law because the evidence establishes that Farr could perform, and did perform, the essential functions of his job without any accommodation. The Court cannot make such a determination as a matter of law because the mere fact that Farr had performed the essential functions of his job before he obtained the guide dog did not in and of itself relieve AutoZone of its duty to enter into the required interactive process with Farr once he made it known that he needed his guide dog to help him work. *See* Buckingham v. United States, 998 F.2d 735, 740 (9th Cir.1993) ("[E]mployers are not relieved of their duty to accommodate when employees are already able to perform the essential functions of the job. Qualified handicapped employees who can perform all job functions may require reasonable accommodation to allow them to ... enjoy the privileges and benefits of employment equal to those enjoyed by non-handicapped employees[.]") The Court cannot, however, conclude as a matter of law that AutoZone was obligated to enter into a reasonable accommodation with Farr because the Court cannot determine from the present record that no genuine issues of material fact exist regarding the extent to which Farr's vision impairments denied him employment-related privileges and benefits enjoyed by other AutoZone employees.

AutoZone also argues that it is entitled to summary judgment on the reasonable accommodation claim because Farr never articulated any need for an accommodation related to the essential functions of his job given that he only told store manager Agredano that he needed his guide dog to help him get to and

from work. Even assuming that AutoZone was obligated to provide Farr with a reasonable accommodation, the Court need not resolve the issue, which is unsettled in this circuit, of whether a reasonable accommodation is necessary to help a disabled employee commute to and from work because if the interactive process was triggered, it occurred at the very latest when Dr. Wright, Farr's treating optometrist, informed AutoZone on December 19, 2003 that Farr needed the guide dog with him at work for safety reasons because the dog acted as his peripheral vision.

The EEOC argues that AutoZone failed as a matter of law to grant Farr's reasonable accommodation request because it never informed Farr of any decision on its part resolving his requested accommodation; in response, AutoZone argues in part that Farr's lack of availability for the interactive process prevented that process from going forward. Since the ADA prohibits either side from delaying or obstructing the interactive process, Humphrey, 239 F.3d at 1137, AutoZone can only be found on summary judgment to have violated the reasonable accommodation requirement if it bears the responsibility as a matter of law for the breakdown in the interactive process. *See* Zivkovic, 302 F.3d at 1089. The Court, viewing the evidence and the reasonable inferences therefrom in AutoZone's favor, concludes that AutoZone has raised a triable issue of fact, albeit marginally so, regarding who was responsible for the interactive process not being timely completed. For example, AutoZone has submitted the testimony of store manager Agredano that Farr told him in January, 2004 that he was going back East for some period of time to visit his father and that Agredano told Farr to call him when he returned so that he (Agredano) could see about putting him back on the schedule, and the testimony of its in-house counsel, Timothy

Harrison, that AutoZone didn't hear from Farr again until September, 2004.

C. Failure to Maintain Records

The EEOC also requests that the Court find as a matter of law that AutoZone violated the ADA's mandatory record keeping requirements by failing to make and preserve certain records relevant to Farr's charge of discrimination that AutoZone was required to keep pursuant to 29 C.F.R. § 1602.14.[12]

AutoZone, in its response to the EEOC's relevant statements of fact, specifically admits that the specified documents underlying the EEOC's record keeping claim existed and that they related to Farr, that the specified documents had been in the possession of AutoZone employees, and that it has not produced to the EEOC any of the specified documents.[13] Given those admissions, the Court makes the limited finding, pursuant to Fed.R.Civ.P. 56(d)(1), that there are no material facts genuinely at issue regarding AutoZone's failure to retain the

---

12 29 C.F.R. § 1602.14 provides in part that an employer must preserve any personnel or employment records made or kept by it, including requests for reasonable accommodation, for one year from the later of the date the record was made or the personnel action was taken, and that an employer must preserve all personnel records relevant to an employee's charge of discrimination or to an ADA action filed by the EEOC until the final disposition of the charge or action.

13 The specific records at issue are (1) the seeing-eye dog certificate that Farr provided to AutoZone's human resources regional manager Scott Anderson, (2) attachments to a five-page fax, dated January 16, 2004, from Anderson to AutoZone's in-house counsel LeJune Rose, and (3) a 22-page fax, dated March 10, 2004, of documents regarding Farr sent by AutoZone's human resources regional manager Donna Porter to AutoZone's in-house counsel Tim Harrison.

specified documents.[14]

Therefore,

IT IS ORDERED that Plaintiff EEOC's Motion for Partial Summary Judgment (doc. #112) is granted to the extent that the Court finds pursuant to Fed.R.Civ.P. 56(d)(1) that there are no material facts genuinely at issue regarding defendant AutoZone, Inc.'s failure to retain certain specified documents for purposes of 29 C.F.R. § 1602.14, and it is denied in all other respects.

IT IS FURTHER ORDERED that the parties shall file their Joint Pretrial Statement and any motions in limine no later than **November 14, 2008**.[15]

IT IS FURTHER ORDERED that the final Pretrial Conference shall be held on **Monday, December 8, 2008, at 11:00 a.m.** in Courtroom 601.[16]

IT IS FURTHER ORDERED that the parties' trial briefs, proposed jury instructions and proposed voir dire questions shall be filed no later than **December 19, 2008**, by 11:00 a.m.[17]

---

[14] AutoZone's initial argument that a violation of 29 C.F.R. § 1602.14 does not constitute a recognizable cause of action was resolved by the Court in its order entered on September 15, 2008 (doc. #125), wherein it ruled that while injunctive relief was a permissible remedy for a violation of § 1602.14, the EEOC could not seek damages for any violation of the regulation.

[15] The parties are directed to review paragraphs 6 and 7 of the Scheduling Order (doc. #19).

[16] The parties are directed to review paragraph 8 of the Scheduling Order (doc. #19).

[17] The trial brief shall raise all significant disputed issues of law and fact, including foreseeable procedural and evidentiary issues, and shall set forth the party's positions thereon with supporting arguments and authorities.

(continued...)

IT IS FURTHER ORDERED that the trial of this action shall commence on **Tuesday, January 13, 2009, at 9:00 a.m.** at the U.S. Post Office and Courthouse, Second Floor, 101 W. Goodwin, Prescott, AZ.

DATED this 29th day of September, 2008.

Paul G. Rosenblatt
United States District Judge

---

[17](...continued)

A form with instructions regarding the marking, listing and custody of exhibits, and a form with instructions regarding the submission of jury instructions, shall be given to counsel at the Pretrial Conference.